UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 17-7646-MWF (JPRx)**          **Date:  October 4, 2018**
Title:     Industrial Bank of Korea, et al. v. ASI Corporation, et al.

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

          Deputy Clerk:                     Court Reporter:
          Rita Sanchez                      Not Reported

          Attorneys Present for Plaintiff:  Attorneys Present for Defendant:
          None Present                      None Present

**Proceedings (In Chambers):**   ORDER RE: DEFENDANTS MAGNELL
                                 ASSOCIATE INC. AND NEWEGG INC.'S MOTION
                                 TO DISMISS PLAINTIFFS' SECOND AMENDED
                                 COMPLAINT [75] AND PLAINTIFFS' EX PARTE
                                 APPLICATION TO STRIKE REQUEST FOR
                                 JUDICIAL NOTICE [82]

      Before the Court is the Motion to Dismiss Second Amended Complaint
("Motion"), filed by Defendants Magnell Associate Inc. dba Newegg.com ("Magnell")
and Newegg, Inc. ("Newegg") (together with Magnell, "Defendants"), on June 18,
2018.  (Docket No. 75).  On July 16, 2018, Plaintiffs NongHyup Bank ("NH"), KEB
Hana Bank ("KEB Hana"), and Kookmin Bank ("KB") (collectively, the "Banks" or
"Plaintiffs") filed their Opposition.  (Docket No. 79).  Defendants filed their Reply on
August 6, 2018.  (Docket No. 80).

      In connection with their Reply, Defendants also filed a Request for Judicial
Notice ("RJN") on August 6, 2018.  (Docket No. 81).  On August 14, 2018, Plaintiffs
filed an Ex Parte Application to Strike Request for Judicial Notice ("Ex Parte
Application").  (Docket No. 82).  Defendants filed their Opposition on August 16,
2018.  (Docket No. 84).

      The Court has read and considered these filings and held a hearing on September
19, 2018.  For the reasons set forth below, the Motion, RJN, and Ex Parte Application
are ruled upon as follows:

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)                Date:  October 4, 2018
Title:       Industrial Bank of Korea, et al. v. ASI Corporation, et al.

- Defendants' Motion to Dismiss Second Amended Complaint is **GRANTED** ***without leave to amend***.  Based upon the allegations in the Second Amended Complaint, Plaintiffs' renewed attempt to establish secondary liability amounts to nothing more than showing a parent-subsidiary relationship between Newegg and Newegg Trading Limited ("NTL"), particularly considering the Court's previous dismissal of NTL on jurisdictional grounds.  Plaintiffs therefore fail to allege sufficiently that NTL acted as Defendants' alter ego or agent.  Moreover, Plaintiffs fail to plead their fraud, negligent misrepresentation, and California's Unfair Competition Law claims with sufficient specificity.  Finally, Plaintiffs' allegations cannot be read to plausibly show that Newegg, rather than NTL, was the driving force behind the alleged fraudulent scheme.

- Both Defendants' RJN and Plaintiffs' Ex Parte Application are **DENIED** *as moot*, because the Court does not rely upon the challenged portion of the Reply to reach its decision.

## I.  BACKGROUND

As it must, the Court assumes the truth of all facts alleged by Plaintiffs in the Second Amended Complaint ("SAC").  The Court's Order on April 26, 2018, granting Defendants' Motion to Dismiss First Amended Complaint, contained a detailed explanation of the relevant facts.  (*See generally* Docket No. 62).  The following background is similar but has been updated to reflect relevant additional allegations and citations to the SAC as the operative complaint.

### A.  Parties and Relevant Non-Parties

Plaintiff Industrial Bank of Korea ("IBK"), a bank incorporated under the laws of the Republic of Korea, is 51.8% owned by the Ministry of Strategy and Finance of Korea.  (SAC ¶ 6).  IBK's primary services include providing financing for Korea's small- and medium-sized enterprises.  (*Id.* ¶ 7).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)                Date:  October 4, 2018
Title:      Industrial Bank of Korea, et al. v. ASI Corporation, et al.

Plaintiff NH, a bank incorporated under the laws of the Republic of Korea, is primarily in the business of lending to farmers and agricultural cooperatives, deposit-taking, and issuing securities and bonds.  (*Id.* ¶ 9).

Plaintiff KEB Hana, a bank incorporated under the laws of the Republic of Korea, is primarily in the business of lending, deposit-taking, and private banking.  (*Id.* ¶ 10).

Plaintiff KB, a bank incorporated under the laws of the Republic of Korea, provides lending, deposit-taking, cash management, private banking, and fund management services to retail, small business, and corporate clients.  (*Id.* ¶ 11).

Defendant ASI Corporation "is or was a Delaware corporation," and Defendant ASI Computer Technologies, Inc., is a California corporation.  (*Id.* ¶ 13).  The Banks allege that ASI Corporation and ASI Computer Technologies, Inc., are indistinguishable and refer to the two collectively as "ASI."  (*Id.*).  (For the purposes of this Motion, the Court will also treat them as a single entity – "ASI.").  "ASI is a wholesale distributor of computer software, hardware, and accessories that has over 500 employees and operates in four different countries, including through 13 sales and warehouse locations in the U.S. and Canada."  (*Id.*).

Defendant Bill Chen was "Chief Financial Officer and/or Vice President of Finance of ASI."  (*Id.* ¶ 14).  Defendant Henry Chen is or was "Vice President of Business Development and/or Vice President of Sales of ASI."  (*Id.* ¶ 15).  Defendant Frances Chou "was a director and agent of ASI, authorized to act on behalf of ASI . . . ."  (*Id.* ¶ 16).  Defendant Christine Liang was "Chief Executive Officer and/or President of ASI" and "controlled the activities of ASI central to [Plaintiff's] Second Amended Complaint . . . ."  (*Id.* ¶ 17).

Defendant Newegg, a Delaware corporation, "is the second largest online-only retailer in the United States" and owns and operates Newegg.com, which sells primarily consumer electronics, smart home, and gaming products.  (*Id.* ¶¶ 18–19).  The Banks allege that Newegg and Newegg.com are "one and the same."  (*Id.* ¶ 20).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)              Date:  October 4, 2018
Title:      Industrial Bank of Korea, et al. v. ASI Corporation, et al.

Defendant Magnell, a California corporation, is a wholly-owned subsidiary of Newegg.  (*Id.* ¶ 21).  The Banks allege that Magnell and Newegg are essentially indistinguishable.  (*Id.* ¶ 24).  Specifically, Newegg owns and operates the website Newegg.com and "Magnell is registered to do business as Newegg.com, and [ ] there are other indicia that Newegg.com may act through Magnell in some respects."  (*Id.*).

Non-party NTL is a Hong Kong corporation.  (*Id.* ¶ 28).  NTL is "wholly-owned by Newegg Greater China (Hong Kong) Company Limited, which is in turn wholly-owned by Newegg Enterprises LLC," which shares the same registered address with Newegg and Magnell in the City of Industry, California.  (*Id.*).  Further, a sales agreement and two guaranties, executed and issued by Newegg, referred to NTL as "a subsidiary and affiliate of Newegg, Inc."  (*Id.*).  Partially on this basis, the Banks allege the corporate relationship as follows:

- Newegg dominated, influenced, and controlled Magnell and NTL, creating a unity of interest and ownership among the entities such that their separate corporate existences ceased to exist.  (*Id.* ¶ 30).

- Newegg used NTL "as a mere shell or conduit for its affairs" and held itself out as liable for NTL's debts.  (*Id.* ¶¶ 33–34).

- Newegg, Magnell, and NTL shared identical equitable ownership, shared some employees and directors, and conducted business on behalf of one another.  (*Id.* ¶¶ 31–32).

- Newegg, Magnell, and NTL were "agents, partners, representatives, affiliates, alter egos and/or co-conspirators of each other" and therefore, Newegg had "full knowledge of, gave substantial assistance to, directed, authorized, consented to, and ratified the alleged misconduct" perpetrated by Magnell and NTL.  (*Id.* ¶ 29; *see id.* ¶¶ 36–37).

Non-party Fred Chang founded Newegg and Magnell and was the Chief Executive Officer and Chairman of Newegg, the Personnel Manager of Magnell, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)                Date:  October 4, 2018

Title:      Industrial Bank of Korea, et al. v. ASI Corporation, et al.

one of the two directors of NTL.  (*Id.* ¶ 32).  Non-party Edison Chih was the Chief
Operating Officer ("COO") of both Newegg and NTL and the Director of Corporate
Planning at Newegg.  (*Id.*).  Non-party Nicole Lee was the President of Newegg
Greater China (Hong Kong) Company Limited and Chief Human Resources of
Newegg, and is allegedly currently managing and overseeing NTL's finances.  (*Id.*).
Non-party Yueh Pai Chang was the Chief Financial Officer of Newegg and the other
director of NTL.  (*Id.*).  Non-party James Wu was the Chief Administrative Officer and
is currently the Chief Technology Officer and COO of Newegg.  (*Id.* ¶ 75).

    Non-party Moneual, Inc. ("Moneual") "was a prominent Korean manufacturer of
computers and home appliances, including robot vacuum cleaners and various types of
personal computers."  (*Id.* ¶ 26).  "Until its demise, Moneual was publicly perceived in
Korea as a successful company on a rapid growth trajectory."  (*Id.* ¶ 41).

    Non-party Hong-Seok Park, whom the Banks refer to as "HS Park," "was the
Chief Executive Officer of Moneual until his arrest and conviction for masterminding
the massive fraud that is the subject of this lawsuit."  (*Id.* ¶ 27).

## B.    Moneual's Relationship with the Banks

    Between 2006 and 2014, Moneual requested that each of the Banks "factor"
Moneual's export trade receivables from, among others, Newegg.  (*Id.* ¶ 43).  The
Banks describe "factoring" as "a form of lending under which a lender purchases a
business's trade receivables at a discount to their face value, advancing the money to
the business and collecting the receivable from the business's customer at its maturity."
(*Id.* ¶ 44).

    Prior to agreeing to factor Moneual's receivables, the Banks purchased export
finance facility ("EFF") insurance from the Korean Trade Insurance Corporation
("KSURE"), South Korea's official trade insurance agency.  (*Id.* ¶ 46).  In connection
with the EFF insurance application process, KSURE conducted due diligence on
Moneual, Newegg, and NTL, including "conducting credit investigations on each of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)                    Date:  October 4, 2018
Title:      Industrial Bank of Korea, et al. v. ASI Corporation, et al.

these entities, and preparing credit certifications of each of their business histories." (*Id.* ¶ 47).

Following this due diligence from KSURE, HS Park, Moneual's CEO, would approach the Banks to "request that they factor Moneual's trade receivables . . . up to the insurance credit limits."  (*Id.* ¶ 48).

### C.    Moneual's Relationship with the Defendants and Non-Parties

From 2012 to 2014, Newegg purchased – or, according to the Banks, purported to purchase – "home theater personal computers" ("HTPCs") from Moneual at prices varying between $2,530 and $2,980 per unit.  (*Id.* ¶¶ 59, 80).  The Banks allege that to "direct[] and authorize[] the Moneual transactions," Newegg used its "Hong-Kong based [NTL] to execute the transactions because Moneual had a manufacturing contractor in Hong Kong."  (*Id.* ¶ 63).

To carry out the alleged fraudulent scheme, Newegg executed two guaranties and two sales agreements with Moneual:

On August 25, 2012, Newegg, which had a much higher credit rating than NTL, executed the first guaranty ("August 2012 Guaranty"), agreeing to guarantee NTL's export receivables "unconditionally and irrevocably" for "up to $20 million to Moneual and its successors and assigns on behalf of [NTL]."  (*Id.* ¶ 64).  Fred Chang executed the guaranty.  (*Id.*).

On January 17, 2013, Fred Chang executed another guaranty ("January 2013 Guaranty") through which Newegg "guaranteed payment of up to $50 million to Moneual and its successors and assigns on behalf of [NTL]."  (*Id.* ¶ 65).

On November 27, 2013, Moneual entered two sales agreements with "Newegg.com" – the "Chih Sales Agreement" and the "Chang Sales Agreement," as the Banks refer to them.  (*Id.* ¶¶ 69–71).  Under the Chih Sales Agreement – executed by Edison Chih – Newegg.com agreed to purchase a total of $250 million of Moneual

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)                    Date:  October 4, 2018
Title:      Industrial Bank of Korea, et al. v. ASI Corporation, et al.

products over two years, which Newegg.com could then sell in the United States,
Canada, and China.  (*Id.* ¶ 71).  Under the Chang Sales Agreement – executed by Fred
Chang – Newegg.com agreed to purchase a total of $400 million of Moneual products
over two years.  (*Id.*).  The Chang Sales Agreement also stated that Newegg's purchase
orders "shall be issued, handled, and paid by [NTL]" and guaranteed by Newegg.com,
which the Banks allege "necessarily referred to its owners and operator, Newegg, Inc."
(*Id.* ¶ 73).

         The Banks allege that Newegg permitted NTL to carry out the transactions on
Newegg's behalf, even though "Newegg, Inc., acting under the name of its website,
Newegg.com, was the contracting party with Moneual and the party that guaranteed to
purchase significant amounts of Moneual's goods."  (*Id.* ¶ 72).

         The Banks also allege that all the KSURE EFF insurance policies Newegg
entered into with Moneual listed the insured importer as "Newegg Inc (Newegg
Com)"; the importer address in the City of Industry, California, where Newegg and
Magnell shared the same registered corporate address; and the "Country of Payor" as
the United States.  (*Id.* ¶ 75).  The Banks further allege that "some of these insurance
policies [but unclear as to how many] state[d] explicitly that [NTL] is Newegg, Inc.'s
agent and representative."  (*Id.*).  Finally, NTL's purchase orders, executed by Edison
Chih and submitted to Moneual, used the Newegg.com logo and referenced
Newegg.com's Terms and Conditions.  (*Id.* ¶¶ 78–79).

         **D.    Relevant Factoring Transactions and Defaults**

         In support of the factoring relationships, Moneual provided the Banks with
documentation evidencing its relationships with NTL (or Newegg.com), including: (1)
invoices and purchase orders evidencing NTL's (or Newegg.com's) purchase (or
purported purchase) of HTPCs from Moneual (*Id.* ¶¶ 79–80); (2) the August 2012
Guaranty and January 2013 Guaranty executed by Newegg (*Id.* ¶¶ 64–65); and (3) the
Chih Sales Agreement and the Chang Sales Agreement between Newegg.com and
Moneual (*Id.* ¶¶ 69–71).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)            Date:  October 4, 2018
Title:      Industrial Bank of Korea, et al. v. ASI Corporation, et al.

The Banks allege that Moneual's "transactions with … Newegg, Inc. (through [NTL] as its alter ego and agent) and other importers were merely a ruse orchestrated by Moneual – with assistance of its foreign importers … to create the illusion that Moneual operated a genuine export business with legitimate customers and transactions so that the Banks would continue to finance Moneual's receivables." (*Id.* ¶ 80).

**1.  NH**

NH began providing Moneual loans against its receivables in September 2011. (*Id.* ¶ 110).  In February 2013, NH entered into a factoring transaction with Moneual relating to receivables due from China National Building Material Co., Ltd. ("CNBM"), a Chinese state-owned enterprise.  (*Id.* ¶ 112).  The CNBM factoring transactions were successful; NH was paid in full and on time (or nearly on time).  (*Id.* ¶ 113).  "The successful consummation of NH's first factoring transaction with Moneual gave NH comfort as to Moneual's creditworthiness, and induced it to enter into additional factoring transactions with Moneual…, including entering into EFAs ["export finance agreements"] to finance Moneual's exports to … Newegg."  (*Id.*). NH also allegedly asked Moneual additional questions about Newegg and NTL related to their business and revenue.  (*Id.* ¶ 114).

On December 13, 2013, NH and Moneual entered into an EFA.  (*Id.* ¶¶ 116).  In connection with the set of receivables Moneual sought to sell NH under the EFA, Moneual provided NH with NTL's relevant purchase orders and Moneual's corresponding invoices, shipping documents, and signed SPIs, which NH staff would review before deciding to purchase the relevant receivables.  (*Id.* ¶¶ 119–120).

NH purchased Moneual's NTL receivables based upon five sets of purchase orders.  Pursuant to those five sets of purchase orders, NTL had ostensibly purchased thousands of HTPC units at a cost of $2,530 per unit.  (*Id.* ¶¶ 136, 141, 146, 151, 156). The first set of purchase orders had an aggregate value of $9,993,500; the second set had an aggregate value of $3,795,000; the third set had an aggregate value of $6,198,500; the fourth set had an aggregate value of $3,795,000; and the fifth set had

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)              Date:  October 4, 2018

Title:      Industrial Bank of Korea, et al. v. ASI Corporation, et al.

an aggregate value of $6,198,500.  (*Id.* ¶¶ 139, 144, 149, 154, 159).  NTL paid NH on the first, second, and third sets of purchase orders, and defaulted on the fourth and fifth sets, which were due to be paid on December 17, 2014, and December 22, 2014, respectively.  (*Id.* ¶¶ 140, 145, 150, 155, 160).

### 2.  KEB Hana

KEB Hana began providing Moneual loans against its receivables in 2012.  (*Id.* ¶ 165).  On August 13, 2012, after obtaining credit investigation results on Moneual and NTL (among other Moneual customers), KEB Hana and Moneual entered into an EFA.  (*Id.* ¶¶ 165–167).  On December 18, 2013, KEB Hana entered into an additional EFA with Moneual.  (*Id.* ¶ 171).

In connection with each set of receivables Moneual sought to sell KEB Hana under the EFAs, Moneual provided KEB Hana with NTL's relevant purchase orders and Moneual's corresponding invoices, shipping documents, and signed SPIs, which KEB Hana staff would review before deciding to purchase the relevant receivables.  (*Id.* ¶¶ 174–175).

Between November 9, 2012, and August 1, 2014, KEB Hana purchased Moneual's NTL receivables based upon what were ostensibly 219 shipments of goods.  (*Id.* ¶ 184).  NTL made timely (or near timely) payments to KEB Hana up until July 2014, which corresponded with 167 of the 219 shipments.  (*Id.* ¶ 185).  The Banks characterize the remaining 52 shipments as two sets of purchase orders pursuant to which NTL had ostensibly purchased millions of dollars' worth of Moneual goods, including HTPCs.  (*Id.* ¶¶ 187–188, 194).  The first set of purchase orders had an aggregate value of $46,754,400; the second set had an aggregate value of $20,235,600.  (*Id.* ¶¶ 191, 197).  NTL defaulted on both sets of purchase orders, which were due to be paid between September 1, 2014, and December 29, 2014.  (*Id.* ¶¶ 192, 198).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)                    Date:  October 4, 2018
Title:      Industrial Bank of Korea, et al. v. ASI Corporation, et al.

3.  **KB**

On June 10, 2013, and October 29, 2013, after obtaining credit investigation results on Moneual and NTL (among other Moneual customers), KB and Moneual entered into EFAs.  (*Id.* ¶¶ 201, 203).  In connection with each set of receivables Moneual sought to sell KB under the EFAs, Moneual provided KB with NTL's relevant purchase orders and Moneual's corresponding invoices, shipping documents, and signed SPIs, which KB staff would review before deciding to purchase the relevant receivables.  (*Id.* ¶¶ 206–207).

KB purchased Moneual's NTL receivables based upon four sets of purchase orders.  Pursuant to those four sets of purchase orders, NTL had ostensibly purchased millions of dollars' worth of Moneual products, including thousands of HTPC units at a cost of $2,530 per unit.  (*Id.* ¶¶ 236, 240, 244, 248).  The first set of purchase orders had an aggregate value of $19,987,000; the second set had an aggregate value of $10,120,000; the third set had an aggregate value of $9,867,000; and the fourth set had an aggregate value of $19,987,000.  (*Id.* ¶¶ 238, 242, 246, 251).  NTL timely (or nearly timely) paid KB on the first, second, and third sets of purchase orders, and defaulted on the fourth set, which was due to be paid by November 14, 2014.  (*Id.* ¶¶ 239, 243, 247, 252).

E.      **The Nature of the Alleged Fraudulent Scheme**

On October 20, 2014, Moneual filed for receivership in South Korea, "owing in excess of $500 million to its lenders, including the Banks."  (*Id.* ¶ 254).  News reports described Moneual's receivership filing as "abrupt," "unexpected," and a "shock," given Moneual's ostensibly healthy operations and finances.  (*Id.*).

In late 2014, the Korean Customs Service initiated an investigation into Moneual.  (*Id.* ¶ 255).  On January 23, 2015, the Seoul district prosecutor indicted HS Park (Moneual's CEO) and other Moneual employees; the indictment was premised upon their execution of "large-scale fraud schemes using circular transactions."  (*Id.*).  "The indictment further charged that Moneual had greatly exaggerated the price of its

_____

CIVIL MINUTES—GENERAL                                    **10**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)                Date:  October 4, 2018
Title:       Industrial Bank of Korea, et al. v. ASI Corporation, et al.

HTPCs, often charging nearly $3,000 per unit when in fact, according to the Korean authorities, they were worth only approximately $7 to $18 per unit." (*Id.*). "The indictment also detailed how Moneual's foreign importers, like … Newegg, Inc., through its alter ego and agent, [NTL], provided Moneual with purchase order numbers to enable Moneual executives to generate false and fraudulent purchase orders, which Moneual then used to obtain financing from at least ten banks, including the plaintiff Banks." (*Id.*).

The Banks allege that the Korean authorities' investigation revealed that Newegg had prepared and emailed fraudulent purchase orders to Moneual or generated purchase order numbers that Moneual could use to create fraudulent purchase orders. (*Id.* ¶¶ 263–264).  Moneual then passed these fraudulent Newegg purchase orders onto the Banks and other financial institutions to support its factoring requests.  (*Id.*). However, "all of the purported transactions between Moneual and Newegg, Inc., through [NTL], took place on paper only; no physical transfer of goods ever occurred." (*Id.*).

"The Korean authorities' investigation also revealed that in exchange for foreign importers' participation in Moneual's fraudulent scheme to obtain money from financial institutions in exchange for bogus export receivables, Moneual paid the foreign importers, including … Newegg, Inc. (or [NTL] on Newegg, Inc.'s behalf), and executives and employees of those foreign importers, kickbacks, which HS Park called 'commissions.'" (*Id.* ¶ 266).

The "Korean authorities' investigation revealed that the money HS Park wired to NTL, on behalf of Newegg, Inc., through the fraudulent circular transactions so that it could pay the Banks included an additional one to two percent 'commission' that Newegg, Inc. would retain as payment for its participation in the scheme." (*Id.* ¶ 272).

HS Park was ultimately convicted "of defrauding ten Korean banks, including the Plaintiff banks, of over $3 billion between 2007 and 2014 based on loans Moneual received for fraudulent export contracts." (*Id.* ¶ 274).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)                Date:  October 4, 2018
Title:        Industrial Bank of Korea, et al. v. ASI Corporation, et al.

In their operative Second Amended Complaint, the Banks assert three claims for relief: (1) fraud; (2) negligent misrepresentation; and (3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*

## II.   REQUEST FOR JUDICIAL NOTICE AND EX PARTE APPLICATION

In conjunction with their Reply filed on August 6, 2018, Defendants request that the Court take judicial notice of a "Protocol of a Suspect Examination (2nd Session) – Hong-Seok Park," a transcript of statements regarding Newegg made by non-party Hong-Seok Park during the course of a Korean Customs Service investigation.  (*See* RJN (Docket No. 81)).  Plaintiffs then filed an Ex Parte Application to Strike RJN on August 14, 2018.  (Docket No. 82).  On August 16, 2018, Defendants filed an Opposition.  (Docket No. 84).

The Court does not rely upon the "Protocol of a Suspect Examination (2nd Session) – Hong-Seok Park," the challenged portion of the Reply, to reach its decision.

Accordingly, Defendants' RJN and Plaintiffs' Ex Parte Application are **DENIED** *as moot*.

## III.   LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . .'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In ruling on the Motion under Rule 12(b)(6), the Court follows *Twombly*, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their Ninth Circuit progeny.  "To survive a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)                Date:  October 4, 2018
Title:      Industrial Bank of Korea, et al. v. ASI Corporation, et al.

motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Court must disregard allegations that are legal conclusions, even when disguised as facts.  *See id.* at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).  "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'"  *Eclectic Properties*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 556–57) (internal citations omitted).

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the complaint alleges a plausible claim for relief.  *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).  "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).  Where the facts as pleaded in the complaint indicate that there are two alternative explanations, only one of which would result in liability, "plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible."  *Eclectic Properties*, 751 F.3d at 996–97; *see also Somers*, 729 F.3d at 960.

Fraud-based allegations are governed by Rule 9(b).  "Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge[.]"  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citations omitted).  Under Rule 9(b), fraud allegations must include the "time, place, and specific content of the false representations as well as the

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 17-7646-MWF (JPRx)              Date:  October 4, 2018**

Title:      Industrial Bank of Korea, et al. v. ASI Corporation, et al.

identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)).  In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106. Such averments must be specific enough to "give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.*  (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

Whereas allegations concerning the circumstances of fraud must include the "the who, what, when, where, and how of the misconduct charged," *id.* (internal quotation marks and citations omitted), issues of "[m]alice intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

## IV.  **DISCUSSION**

Through their Motion, Defendants argue that: (1) Plaintiffs' allegations do not support any form of secondary liability, (2) Plaintiffs' fraud claim is fatally deficient because the allegations fail to establish cognizable claims, (3) Plaintiffs' negligent misrepresentation claim is also fatally deficient for the same reason, and in any event, the claim is barred by the statute of limitations, and (4) Plaintiffs' UCL claim fails as a matter of law.  The Court will address each argument in turn.

### A.      **Secondary Liability**

Because the thrust of the SAC remains focused on the alleged misconduct of NTL, an indirect subsidiary of Newegg, Defendants argue that Plaintiffs' renewed attempt to establish secondary liability amounts to nothing more than showing a routine parent-subsidiary relationship.  The Court agrees and finds that the SAC has offered no new meaningful allegations to establish that NTL was an alter ego or agent of Newegg and/or Magnell.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)              Date:  October 4, 2018
Title:     Industrial Bank of Korea, et al. v. ASI Corporation, et al.

### 1.  Alter Ego Theory

Plaintiffs argue that the SAC adequately alleges that NTL was Newegg and/or Magnell's alter ego.  (Opp. at 17–22).

"[T]he alter ego test may be used to extend personal jurisdiction to a foreign parent *or* subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate."  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (emphasis in original).  "To satisfy the alter ego test [to justify exercising personal jurisdiction or apply an alter ego theory of liability], a plaintiff must make out a prima facie case (1) that there is such ***unity of interest and ownership*** that the separate personalities [of the two or more entities] no longer exist ***and*** (2) that failure to disregard [their separate identities] would result in ***fraud or injustice***."  *Id.* (internal quotation marks and citations omitted; alterations in original; emphasis added).

### a.  *Unity of interest and ownership*

"The 'unity of interest and ownership' prong of this test requires a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former."  *Id.* (internal quotation marks and citations omitted).  "This test envisions ***pervasive control*** over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business – from broad policy decisions to routine matters of day-to-day operation."  *Id.* (internal quotation marks and citations omitted; emphasis added).

Routine interaction and coordination between a parent and its subsidiary is not "pervasive control."  *See, e.g.*, *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 983 (N.D. Cal. 2016) (so long as corporate formalities are observed, "an active parent corporation involved directly in decision-making about its subsidiaries' holdings" is insufficient to overcome presumption of corporate separateness) (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001)); *AGA Service Co. v. United Air Ambulance, LLC*, No. 16-cv-2663-W, 2017 WL 4271991, at *3 (S.D. Cal. Sept. 26, 2017) ("[A] close relationship between the [parent and subsidiary] … is not sufficient

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)                    Date:  October 4, 2018
Title:      Industrial Bank of Korea, et al. v. ASI Corporation, et al.

to establish the type of pervasive control necessary to satisfy the unity-of-interest test.").  Indeed, even "[t]otal ownership and shared management personnel are alone insufficient to establish the requisite level of control."  *Ranza*, 793 F.3d at 1073.

Factors relevant to the unity-of-interest analysis include: "[1] the commingling of funds and other assets of the entities, [2] the holding out by one entity that it is liable for the debts of the other, [3] identical equitable ownership of the entities, [4] use of the same offices and employees, [5] use of one as a mere shell or conduit for the affairs of the other, [6] inadequate capitalization, [7] disregard of corporate formalities, [8] lack of segregation of corporate records, and [9] identical directors and officers."  *Corcoran*, 169 F. Supp. 3d at 983 (internal citations omitted; bracketed numbers in original).

Plaintiffs argue that allegations in the SAC "support at least six of nine factors."  (Opp. at 18).  The Court disagrees and finds only the second and ninth factors support the conclusion that NTL acted as Newegg and/or Magnell's alter ego.  The remaining seven factors are neutral or militate against that conclusion.

As to the first and second factors, Plaintiffs point to same allegations in the SAC for support and address them together.  Accordingly, the Court will also address them together.  Plaintiffs first argue that Newegg executed the August 2012 Guaranty and the January 2013 Guaranty on behalf and for the benefit of NTL.  (*Id.* at 18–19).  Similarly, the Chih Sales Agreement and the Chang Sales Agreement between Newegg and Moneual – in which Newegg.com agreed to purchase $650 million of Moneual products over two years – stated that Newegg's "subsidiaries [including NTL] could purchase products for it … [but Newegg] would guarantee the total amount of purchase from [NTL] and be fully responsible for any financial issues."  (*Id.* at 19).  Further, Plaintiffs state that Newegg issued payments for the goods and NTL continued to pay Plaintiffs – even though the SAC actually alleges that Plaintiffs "received payment for all purchased export receivables from ***Newegg, Inc.***—acting through [NTL]."  (*Compare* SAC ¶ 82 *with* Opp. at 19) (emphasis added).  Finally, Plaintiff appears to place much emphasis on the fact that the KSURE EFF insurance policies named

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)              Date:  October 4, 2018
Title:      Industrial Bank of Korea, et al. v. ASI Corporation, et al.

Newegg as guarantor, but this is misleading because, as Defendants note, the policies were drafted and issued by KSURE and not Defendants.  (*Id.*; Mot. at 17).

The Court is unpersuaded that Newegg and NTL commingled corporate funds without more relevant allegations (e.g., transferring money between accounts without documentation or having one shared account between the two entities).  The Court agrees, however, that the two guaranties and two sales agreements qualify as "holding out by one entity that it is liable for the debts of another."  *See Fru-Con Const. Corp. v. Sacramento Mun. Util. Dist.*, No.  05-cv-583-LKK, 2007 WL 2384841, at *7 (E.D. Cal. Aug. 17, 2007).  But corporate parents may, and indeed routinely do, guaranty debts of their subsidiaries while still maintaining corporate separateness.  *See id.* ("The fact that [the parent] used its financial weight to secure [the subsidiary's] bond is insufficient to establish alter ego liability.") (collecting cases).  Accordingly, the first factor militates against and the second factor militates in favor of, albeit very marginally, finding an alter ego relationship between Newegg and NTL.

As to the third factor, Plaintiffs argue that Newegg and NTL share identical equitable ownership because NTL is a wholly-owned subsidiary of Newegg, strongly suggesting that Fred Chang, Newegg's founder and CEO and an NTL director, ultimately beneficially owns both entities.  (Opp. at 19).  The SAC, however, alleges that NTL, via Newegg Greater China (Hong Kong) Company Limited, is wholly-owned by Newegg Enterprises LLC.  (SAC ¶ 28).  Newegg Enterprises LLC, in turn, shares the same City of Industry, California registered address as Newegg, which suggests that NTL "is a subsidiary and affiliate of Newegg."  (*Id.*; Mot. at 18).  These allegations, accepted as true, merely establish that NTL is Newegg's subsidiary and do not suggest that a single person (or group of people) is the ultimate beneficial owner of both Newegg and NTL dictating the actions of both companies.  Plaintiffs' conclusory and speculative allegation that Fred Chang ultimately beneficially owns both entities is unavailing.  The third factor is thus neutral at best.

As to the fourth factor, Plaintiffs allege that Newegg and Magnell are headquartered in an office in City of Industry, California, while NTL is incorporated in and maintains its office in Hong Kong.  (SAC ¶¶ 22, 27).  With respect to overlapping

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)                    Date:  October 4, 2018
Title:       Industrial Bank of Korea, et al. v. ASI Corporation, et al.

employees, Plaintiffs point to four people: (1) Fred Chang, the founder of both Newegg and Magnell, CEO and Chairman of Newegg, Personnel Manager of Magnell, and one of two NTL directors; (2) Edison Chih, COO of Newegg and NTL and Fred Chang's assistant; (3) Nicole Lee, Chief Human Resources Officer of Newegg and President of Newegg Greater China (Hong Kong) Company Limited, which ostensibly involves managing and overseeing NTL's finances; and (4) Yueh Pai Chang, Chief Financial Officer of Newegg and the other NTL directors.  (*See id.* ¶ 32; Opp. at 19–20). Plaintiffs do not identify when Nicole Lee and Yueh Pai Chang held their role at NTL or allege their misconduct, if any.  In the context of establishing an alter ego relationship, Plaintiffs' allegations are underwhelming.  *See Ranza*, 793 F.3d at 1074 ("Some employees and management personnel move between the entities, but that does not undermine the entities' formal separation.").  Plaintiffs have also failed to allege more striking facts, for example, a shared office space between Newegg/Magnell and NTL.  The fourth factor thus militates against finding an alter ego relationship.

As to the fifth factor, Plaintiffs allege that Newegg used NTL as a mere shell or conduit because Newegg (1) purportedly asked to be involved in the fraudulent scheme, (2) allowed NTL to perform certain intra-Hong Kong transactions, (3) executed the two guaranties and the two sales agreements, (4) was named as the "Importer" in the insurance policies with KSURE, and (5) permitted NTL to use the Newegg.com logo and to reference Newegg's standard terms and conditions.  (SAC ¶¶ 34, 61, 63–76; Opp. at 20–21).  These allegations, however, are largely unavailing because they are not relevant (the insurance policies were not issued by Defendants), are conclusory and speculative (that Newegg asked to be a part of the scheme) (*id.* ¶¶ 34, 63), or contain no material deviations from previously rejected allegations in the FAC (the two guaranties and two sales agreements) (*compare id.* ¶¶ 69–74 *with* FAC ¶¶ 58–65).  Moreover, as the Court previously noted, the fact that Newegg and/or NTL made use of the "Newegg.com" logo or trade name does not render them alter egos of one another.  *See, e.g.*, *Eagle Canyon Owners' Ass'n v. Waste Mgmt., Inc.*, No. 16-cv-2811-LAB, 2017 WL 3017501, at *5 (S.D. Cal. Jul. 13, 2017) ("Use of a licensed logo on contracts, trucks, or online doesn't make a parent company party to a contract or

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)                Date:  October 4, 2018
Title:       Industrial Bank of Korea, et al. v. ASI Corporation, et al.

subject to personal jurisdiction.") (internal citations omitted).  The fifth factor thus militates against finding an alter ego relationship.

As to the sixth, seventh, and eighth factors, the SAC contains no allegations and Plaintiffs' Opposition does not suggest that any of the relevant entities are inadequately capitalized, that any of the relevant entities disregard corporate formalities, or that any of the relevant entities fail to segregate their corporate records from the records of the other entities.  The sixth, seventh, and eighth factors thus militate against finding an alter ego relationship.

As to the ninth factor, the Court finds some support for Plaintiffs' position that there are identical directors and officers for the reason stated in the fourth factor.  However, this factor only slightly militates in favor of finding that NTL was Newegg's alter ego, since "'[it] is considered a normal attribute of ownership that officers and directors of the parent serve as officers and directors of the subsidiary.'"  *Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1138–39 (C.D. Cal. 2015) (quoting *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 548–49, 99 Cal. Rptr. 2d 824 (2000)).

In sum, only two of the nine factors – Newegg assuming liability for NTL's debt under the two guaranties and overlapping directors and officers – support Plaintiffs' unity-of-interest position.  That is not enough to disregard corporate separateness.  *See Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 956 (N.D. Cal. 2015) ("Here, three factors weigh in favor of finding a unity of interest among the [defendant] entities: equitable ownership, use of the same offices and employees…, and identical officers and directors.  These factors, even when considered together, are not sufficient to support of finding of unity of interest among these entities.").

Accordingly, there is insufficient unity of interest between NTL and Newegg and/or Magnell to establish an alter ego relationship.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)                Date:  October 4, 2018
Title:       Industrial Bank of Korea, et al. v. ASI Corporation, et al.

### b.  *Fraud or injustice*

Unity of interest aside, Plaintiffs have also failed to demonstrate that fraud or injustice will follow by not recognizing an alter ego relationship between Defendants and NTL.

Plaintiffs argue that because the SAC alleges a fraudulent scheme concocted by Defendants and NTL, fraud or injustice would follow if the Court adheres to their corporate separateness.  (Opp. at 21) ("Here, the SAC alleges that Newegg, Inc. [took various actions as stated above] … for fraudulent NTL receivables… These allegations show that Newegg, Inc. acted in bad faith, perpetuated the fraud, and misrepresented the corporate form…").  At the hearing, Plaintiffs argued that the Court should not place too much weight on corporate formalities.  But accepting Plaintiffs' argument would essentially eliminate this prong of the analysis, since every complaint involving an alter ego relationship would necessarily involve allegations that one corporate entity is hiding behind the corporate veil of another.

Moreover, as previously recognized by the Court, Plaintiffs may pursue NTL, the alleged primary wrongdoer whom Defendants purportedly controlled, in its home of Hong Kong (or wherever else it might be subject to jurisdiction).  Certainly, Hong Kong courts would be more than capable of resolving Plaintiffs' dispute with NTL. *See, e.g.*, *Cook v. Champion Shipping AS*, 732 F. Supp. 2d 1029, 1038 (E.D. Cal. 2010) (finding that Hong Kong is an adequate alternative forum and dismissing maritime action on forum non conveniens grounds); *Capri Trading Corp. v. Bank Bumiputra Malaysia Berhad*, 812 F. Supp. 1041, 1044 (N.D. Cal. 1993) (finding that Hong Kong is an adequate alternative forum and dismissing civil RICO action on forum non conveniens grounds).

Accordingly, the Court finds no risk of fraud or injustice by declining to recognize an alter ego relationship between Defendants and NTL.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)                    Date:  October 4, 2018
Title:      Industrial Bank of Korea, et al. v. ASI Corporation, et al.

### 2.  Agency Theory

Plaintiffs next argue that Newegg and/or Magnell and NTL were in an agency relationship.  (SAC ¶ 22; Opp. at 22).

The SAC, however, offers no allegations to suggest anything more than a close parent-subsidiary relationship between Defendants and NTL.  For example, Plaintiffs conclude that that Defendants and NTL were "agents, partners, representatives, affiliates, alter egos and/or co-conspirators of each other" and repeatedly allege that Newegg "dominated, influenced, and controlled Magnell and [NTL]," but offer no other facts to support such descriptions.  (*See* SAC ¶¶ 29–30, 32, 36, 59; Opp. at 22).  Further, Plaintiffs point to the two sales agreements, the KSURE insurance policies, the purchase orders, and other contracts as evidence that Newegg "controlled NTL's day-to-day operations with respect to the fraudulent scheme."  (Opp. at 23).  But, as Defendants note, these contractual relationships actually cut against Plaintiffs' argument that NTL was Defendants' agent since they concern three distinct business relationships: Newegg and Moneual, Newegg and NTL, and Moneual and NTL.

Through unadorned labels and conclusory statements, Plaintiffs' attempt to allege the existence of an agency relationship between Defendants and NTL falls far short of the pleading standards.  *See, e.g.*, *Lomeli v. Jackson Hewitt, Inc.*, No. 17-cv-02899-ODW-KSx, 2017 WL 4773099, at *4 (C.D. Cal. Oct. 19, 2017) ("[W]here a plaintiff alleges that a defendant is liable for fraud under an agency theory, Rule 9(b) requires that the existence of the agency relationship be pled with particularity.") (internal citation and quotation omitted); *Sawyer v. Bill Me Later, Inc.*, No. 10-cv-04461-SJO-JCGx, 2010 WL 11492736, at *15 (C.D. Cal. Dec. 14, 2010) ("To establish a parent corporation's liability for the acts or omissions of its subsidiary under an agency theory … a plaintiff must show that the 'parent corporation *so controls the subsidiary* as to cause the subsidiary to become *merely* the agent or instrumentality of the parent[.]'").  The Court is therefore unpersuaded that an agency relationship existed between Defendants and NTL.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)              Date:  October 4, 2018
Title:        Industrial Bank of Korea, et al. v. ASI Corporation, et al.

Accordingly, Defendants' Motion is **GRANTED *without leave to amend*** with respect to Plaintiffs' secondary liability claim.

### B.        Fraud Claim

Defendants next argue that Plaintiffs again fail to plead their fraud and negligent misrepresentation claims with sufficient specificity and therefore should be dismissed without further leave to amend.  (Mot. at 15–21; Reply at 3–13).  The Court will first turn to the fraud claim.

The Court, in its Order on April 26, 2018, granting Defendants' Motion to Dismiss First Amended Complaint, noted that "the bulk of the complained-of factoring transactions involved NTL rather than Newegg" and that "NTL is the primary, and perhaps the only, wrongdoer." (Docket No. 62 at 24–25).  Plaintiffs therefore might consider pursuing NTL in Hong Kong or wherever it may be pursued.  (*Id.*).  Further, given the pervasive failure to distinguish between the alleged misconduct between Defendants and NTL, Plaintiffs may file a SAC in which they allege with more specificity as to what Newegg and/or Magnell did or did not do.  (*Id.*).

The Court is unpersuaded that Plaintiffs have sufficiently done so for several reasons:

*First*, rather than remedying their allegations in the FAC – which referred to Defendants and NTL collectively as "Newegg" and/or "Newegg.com" – Plaintiffs have simply repackaged their allegations to state that Newegg committed the fraud and that NTL acted on Newegg's behalf at all relevant times.

For example, Plaintiffs previously alleged in the FAC that:

- "Before purchasing Moneual's export trade receivables from ASI, Newegg and other importers, the Banks purchased [EFF Insurance] from KSURE]."  (FAC ¶ 36);

---

**CIVIL MINUTES—GENERAL**                                          **22**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)                Date:  October 4, 2018
Title:      Industrial Bank of Korea, et al. v. ASI Corporation, et al.

- "[B]eginning in 2012 and continuing until the scheme was uncovered in later 2014, [NTL], with Newegg, Inc.'s … knowledge…"  (*Id.* ¶ 52);

- "In accordance with the SPIs … the Banks received payment for all purchased export receivables from Newegg payable before September 2014…."  (*Id.* ¶ 66);

- "The successful consummation of some export finance transactions with ASI and Newegg…" (*Id.* ¶ 67).

Looking at the same statements in the SAC, Plaintiffs now allege that:

- "In connection with purchasing Moneual's export trade receivables from ASI, Newegg, Inc., ***acting through [NTL]***, and other importers, the Banks purchased EFF insurance from KSURE."  (SAC ¶ 85);

- "Beginning in 2012 and continuing until the scheme was uncovered in later 2014 Newegg, Inc., ***acting through its subsidiary, [NTL]***…" (*Id.* ¶ 59);

- "In accordance with the SPIs ... the Banks received payment for all purchased export receivables from Newegg, Inc.—***acting through [NTL]***—payable before September 2014…"  (*Id.* ¶ 82); and

- "The successful consummation of some export finance transactions with ASI and Newegg, Inc. (***acting through [NTL]***) …" (*Id.* ¶ 83).

Plaintiffs, in fact, riddle their allegations in the SAC with some variation of the phrase "acting through NTL" when discussing actions attributable only to Newegg. (*See, e.g.*, SAC ¶¶ 59, 82–83, 85, 91, 93–94, 97, 111, 113, 115, 119, 165, 295).

***Second***, the substance of the fraudulent factoring transactions in the SAC still involves allegations against NTL rather than Newegg or Magnell.  For example, Plaintiffs allege that it was NTL that:

---

CIVIL MINUTES—GENERAL                                           23

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)                Date:  October 4, 2018
Title:     Industrial Bank of Korea, et al. v. ASI Corporation, et al.

- Received and countersigned SPIs (*see, e.g.*, *id.* ¶¶ 81 ("Moneual would send Newegg, Inc.'s agent and representative, [NTL], SPIs…"), 138 ("Moneual also sent Newegg, Inc., through its agent and alter ego, [NTL], an SPI…"));

- Issued fraudulent purchase orders for Moneual products that were passed on to the Banks (*see, e.g., id.* ¶¶ 59 ("Newegg, Inc., acting through its subsidiary, [NTL]—which Newegg, Inc. directed and controlled at all relevant times— issued fraudulent purchase orders…"), 80 ("Moneual purported to charge [NTL] between $2,530 and $2,980 per HTPC unit, and those amounts were stated on the invoices and purchase orders from [NTL]…"));

- Engaged in paper-only transactions with Moneual (*see, e.g., id.* ¶ 60 ("[T]he transactions entered into between Moneual and [NTL] … took place on paper only.")); and

- Purported to purchase Moneual products and received invoices from Moneual (*see, e.g. id.* ¶ 80 ("The invoices that Moneual issued to [NTL] listed Moneual as the seller and [NTL] … as the consignee of the goods.")); and

- Made payments, prior to any default, to the Banks in accordance with the SPIs (*see, e.g., id.* ¶¶ 140 ("NH received banks transfers … from an account in the name of [NTL]…"), 145 (same), 150 (same), 239 ("KB received a payment … from an account in the name of [NTL]…"), 243 (same), 247 (same)).

Because the allegations continue to tie the alleged misconduct to actions perpetrated by NTL rather than Newegg or Magnell, Plaintiffs' fraud claim remains nonviable – particularly in light of the Court's previous dismissal of NTL on personal jurisdiction grounds.  *See U.S. ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 997–98 (9th Cir. 2011) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.") (internal quotation marks and citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 17-7646-MWF (JPRx)              Date:  October 4, 2018**

Title:       Industrial Bank of Korea, et al. v. ASI Corporation, et al.

     ***Third***, it appears that Newegg is specifically alleged to have only executed the two guaranties and the two sales agreements and purportedly asked to be involved in the fraudulent scheme.  But as already discussed, these allegations are conclusory, speculative, and insufficient to establish an alter ego or agent relationship between Defendants and NTL – something that may salvage Plaintiffs' fraud claim.  *See supra*; *Lee*, 655 F.3d at 998.

     ***Finally***, at the hearing, Plaintiffs argued that there are specific allegations in the SAC that can be read plausibly to show that Newegg was the driving force behind the alleged fraudulent scheme instead of NTL being the driving force with Newegg lending financial support, consistent with an ordinary parent-subsidiary relationship.

     Plaintiffs' SAC contains the following four specific allegations supporting their argument raised at the hearing: (1) Moneual is alleged to be doing business with Newegg.com, purportedly owned, operated, and controlled by Newegg at all relevant times; (2) Newegg, rather than NTL, was ultimately responsible for paying the receivables due on the Moneual-Newegg transactions; (3) the payments Plaintiffs were receiving were ultimately coming from Newegg; and (4) Newegg was merely acting through NTL, its Hong Kong subsidiary, with respect to the purchase orders, purported physical delivery of the goods, and all other misconduct.  (*See, e.g.*, SAC ¶¶ 21–24, 29–30).

     But upon further review, these allegations conflict with or are undermined by other statements in the SAC and case law examining similar allegations.  Accepting uncontroverted allegations as true, these conflicting allegations suggest that Plaintiffs' theory of liability is nonviable even at the pleading stage.  *See Webcor Construction, LP v. Zurich Am. Ins. Co.*, No. 17-cv-2220-YGR, 2017 WL 4310763, at * 4 (N.D. Cal. Sept. 28, 2017) (granting motion to dismiss under Rule 12(b)(6) because the plaintiff's theory "is not supported by the conflicting allegations in the FAC").

     The Court will turn to each of the four specific allegations.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)                 Date:  October 4, 2018
Title:       Industrial Bank of Korea, et al. v. ASI Corporation, et al.

### 1.  Moneual's Relationship with Newegg.com

As to Plaintiffs' allegation that Moneual was conducting business with Newegg.com, allegedly owned, operated, and controlled by Newegg, the SAC contains several conflicting statements.  For example, Plaintiffs allege that Magnell, not Newegg, "is registered to do business as Newegg.com"; that there are "other indicia that Newegg.com may have act[ed] through Magnell in some [unspecified] respects"; and that Plaintiffs cannot plead "precisely what Magnell's role was … in the scheme … involving Newegg.com".  (SAC ¶¶ 21, 23).  Plaintiffs also acknowledge that Magnell is named as a Defendant "to the extent that it took actions [again, unspecified] under the name Newegg.com."  (*Id.* ¶ 24).

Plaintiffs appear to recognize that both Newegg and Magnell may have directed or controlled Newegg.com, to varying degrees, during the relevant timeframe.  Yet, Plaintiffs still lump together Newegg and Magnell and attribute any actions involving Newegg.com to only Newegg without distinguishing between the actions attributable to Newegg and those attributable to Magnell.  Plaintiffs even go as far as pleading that Newegg, Magnell, and NTL "were agents, partners, representatives, affiliates, alter egos and/or co-conspirators of each other and each was acting within the scope of such agency, partnership, representation, affiliation, or conspiracy" and that Newegg "dominated, influenced, and controlled Magnell and [NTL]" at all relevant times.  (*Id.* ¶¶ 29–30).  It seems that Plaintiffs, again, want to attribute all alleged fraudulent actions to Newegg, a theory that the Court has already rejected in its previous Order.

The decision in *Swartz* is particularly instructive.  476 F.3d at 765.  There, the complaint contained "general allegations" that the defendants had engaged in fraudulent conduct but failed to plead which alleged misconduct is attributable to which specific defendant(s).  *Id.* at 763–64.  The Ninth Circuit noted that "there is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify [the actions of] … each and every defendant."  *Id.* at 764.  However, the plaintiff must, at a minimum, "identify the role of each defendant in the alleged fraudulent scheme."  *Id.* at 765 ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s]

---

CIVIL MINUTES—GENERAL                                                    26

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)                Date:  October 4, 2018
Title:      Industrial Bank of Korea, et al. v. ASI Corporation, et al.

plaintiffs to differentiate their allegations when suing more than one defendant … and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.") (internal quotation marks and citations omitted). Moreover, the Ninth Circuit concluded that "the lack of specificity in [the plaintiff's] allegations of fraud provides an independent reason" to dismiss under Rule 12(b)(6). *Id.*

## 2.  Receivables Due on the Moneual-Newegg Transactions

As to Plaintiffs' contention that Newegg, rather than NTL, was ultimately responsible for paying the receivables due on the Moneual-Newegg transactions, the SAC contains allegations that point to the opposite conclusion and conclusory statements that are insufficient under Rule 12(b)(6).

At numerous points in the SAC, for example, Plaintiffs recognize that the trade receivables were due from NTL, rather than Newegg.  (*See, e.g.*, SAC ¶¶ 64 ("Moneual transmitted the August 2012 Guaranty from Newegg, Inc. to KSURE … [and] KSURE extended Moneual an insurance credit line for the ***Newegg Trading Limited trade receivables***."), 65 ("Newegg, Inc. executed the January 2013 Guaranty so that Moneual could procure EFF insurance … for the ***Newegg Trading Limited export receivables***."), 88 ("In connection with seeking to sell its ***Newegg Trading Limited trade receivables***…"), 166 ("KEB Hana also purchased EFF insurance from KSURE … to secure ***Newegg Trading Limited receivables*** it factor."), 206 ("for each set of … export ***receivables from Newegg Trading Limited***…"), 208 ("KB purchased Moneual's ASI and ***Newegg Trading Limited receivables***…") (emphasis added)).

Yet, Plaintiffs continue to attribute NTL receivables to Newegg by merely adding the phrase "acting through" in other parts of the SAC.  (*See, e.g.*, *id.* ¶¶ 85 ("In connection with purchasing Moneual's export trade receivables from … Newegg, Inc., acting through Newegg Trading Limited…"), 93 ("Moneual agreed to transfer certain trade receivables backed by purchase orders from third parties—including … Newegg, Inc., acting through Newegg Trading Limited…"), 111 ("In or around 2013, Moneual requested that NH factor its open account export receivables, including, among others,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)                    Date:  October 4, 2018
Title:       Industrial Bank of Korea, et al. v. ASI Corporation, et al.

receivables due from … Newegg, Inc., acting through Newegg Trading Limited, secured by EFF Insurance.").

Like the attempt to attribute all actions involving Newegg.com to only Newegg, Plaintiffs appear to want to attribute all actions involving export trade receivables to only Newegg, without differentiating the role of Newegg (as guarantor) and NTL (as the counterparty to the agreements with Moneual). This attempt, however, is unconvincing to show that Newegg was ultimately and solely responsible for paying the receivables due on the Moneual-Newegg transactions. *See, e.g.*, *United States v. Kiewit Pacific Co.*, No. 12-cv-2698-JST, 2013 WL 5770514, at *11 (N.D. Cal. Oct. 24, 2013) (granting motion to dismiss as to the fraud claims and noting that the plaintiffs' allegations that "Kiewit Pacific Co. *acted through* Kiewit Infrastructure Group" are insufficient) (emphasis added); *Filler v. Hanvit Bank*, No. 01-cv-9510-MGC, 2003 WL 22110773, at *3 (S.D.N.Y. Sept. 16, 2004) (dismissing fraud claims against related corporate entities for lack of specificity where the "complaint are full of conclusory allegations that the Korean entity *acted through* [its] parent … and assume that these two corporations constitute a single entity [without] any explanation of why these distinct corporations should be regarded as one") (emphasis added).

The difference in Plaintiffs' allegations against ASI and allegations against Newegg is also telling. Against Defendants ASI and Newegg, Plaintiffs' SAC contains some common allegations: (1) there is a parent-subsidiary relationship; (2) the parent and subsidiary share some common directors, officers, and employees; and (3) the parent and subsidiary maintain the same registered corporate address. But in contrast to the allegations against Newegg, Plaintiffs also allege the following against ASI:

- ASI Corp. is or was an affiliate of ASI Computer at all relevant times because it merged into ASI Computer during the fraudulent scheme;

- ASI Corp. and ASI Computer did not distinguish between themselves in communications with third parties;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)                    Date:  October 4, 2018
Title:      Industrial Bank of Korea, et al. v. ASI Corporation, et al.

- ASI Corp. and ASI Computer did not distinguish the roles of their officers, directors, employees, and agents;

- ASI Corp. and ASI Computer identified their affiliates (*i.e.*, officers, directors, employees, and agents) interchangeably with either or both entities; and

- ASI Corp. and ASI Computer shared an email domain: "@asipartner.com".

(*See, e.g.*, SAC ¶¶ 13–17).  Consequently, Plaintiffs' allegations need not specifically distinguish between ASI Corp. and ASI Computer, especially considering the merger. The SAC offers a more persuasive inference at the pleading stage that ASI Computer was the driving force behind the alleged fraudulent scheme and was ultimately responsible for paying the receivables due on the Moneual-ASI transactions.  The Court therefore denied Defendants ASI's Motion to Dismiss Plaintiffs Industrial Bank of Korea, et al.'s First Amended Complaint.  (Docket No. 62).

### 3.  Purported Payments from Newegg

As to Plaintiffs' contention that the payments Plaintiffs received were ultimately coming from Newegg, the SAC again contains conflicting statements and lends little to no support.

For example, for the five sets of purchase orders between NTL and NH, Plaintiffs allege the following:

- "Moneual had assigned the right to payment for goods sold pursuant to the First Set of NH-Newegg Purchase Orders to NH and ***instructing Newegg, Inc., through Newegg Trading Limited, to pay NH*** directly when payment became due."  (*Id.* ¶ 138);

- "Moneual had assigned the right to payment for goods sold pursuant to the Second Set of NH-Newegg Purchase Orders to NH and ***instructing Newegg,***

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)                    Date:  October 4, 2018
Title:        Industrial Bank of Korea, et al. v. ASI Corporation, et al.

> *Inc., through Newegg Trading Limited, to pay NH* directly when payment
> became due."  (*Id.* ¶ 144);

- "Moneual had assigned the right to payment for goods sold pursuant to the Third Set of NH-Newegg Purchase Orders to NH and *instructing Newegg Trading Limited to pay NH* directly when payment became due."  (*Id.* ¶ 148);

- "Moneual had assigned the right to payment for goods sold pursuant to the Fourth Set of NH-Newegg Purchase Orders to NH and *instructing Newegg Trading Limited to pay NH* directly when payment became due."  (*Id.* ¶ 153); and

- "Moneual had assigned the right to payment for goods sold pursuant to the Fifth Set of NH-Newegg Purchase Orders to NH and *instructing Newegg Trading Limited to pay NH* directly when payment became due."  (*Id.* ¶ 158).

When viewing these allegations in the light most favorable to Plaintiffs, it appears that most of the payments (3 out of 5) received by NH came from NTL rather than Newegg.  This interpretation is still insufficient to support Plaintiffs' contention that the payments they received were ultimately coming from Newegg.  But when ignoring the conclusory and unsupported allegations that Newegg "acted through" NTL, Plaintiffs' SAC suggests that the payments received by NH all came from NTL. And in fact, Plaintiffs later recognize that the completed payments came from an NTL account.  (*See, e.g.*, *id.* ¶¶ 140 ("NH received bank transfers … from an account in the name of Newegg Trading Limited [for the first set of purchased orders.]"), 145 ("NH received a bank transfer … from an account in the name of Newegg Trading Limited [for the second set of purchased orders.]")).

Plaintiffs' allegations with respect to the four sets of purchase orders between NTL and KB are even more revealing:

- "Moneual also sent Newegg Trading Limited SPIs informing it that Moneual had assigned the right to payment for goods sold pursuant to the First Set of KB-

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)                Date:  October 4, 2018
Title:      Industrial Bank of Korea, et al. v. ASI Corporation, et al.

Newegg Purchase Orders to KB and ***instructing Newegg Trading Limited to pay KB*** directly when payment became due." (*Id.* ¶ 237);

- "Moneual had assigned the right to payment for goods sold pursuant to the Second Set of KB-Newegg Purchase Orders to KB and ***instructing Newegg Trading Limited Newegg, Inc.'s agent and alter ego, to pay KB*** directly when payment became due." (*Id.* ¶ 241);

- "Moneual had assigned the right to payment for goods sold pursuant to the Third Set of KB-Newegg Purchase Orders to KB and ***instructing Newegg Trading Limited, Newegg, Inc.'s agent and alter ego, to pay KB*** directly when payment became due." (*Id.* ¶ 245); and

- "Moneual had assigned the right to payment for goods sold pursuant to the Fourth Set of KB-Newegg Purchase Orders to KB and ***instructing Newegg Trading Limited, Newegg, Inc.'s agent and alter ego, to pay KB*** directly when payment became due." (*Id.* ¶ 250).

Like the payments received by NH, the payments received by KB all came from an account in the name of and owned by NTL.  The Court has already previously rejected – and still rejects, *see supra* – Plaintiffs' theory that NTL was Newegg's alter ego or agent, as there is insufficient unity of interest between NTL and Newegg.  *See Xyience Beverage Co., LLC v. Statewide Beverage Co., Inc.*, No. 15-cv-2513-MMM, 2015 WL 13333486, at *8 (C.D. Cal. Sept. 24, 2015) (concluding that plaintiffs' "cross-claim does not survive Rule 12(b)(6) scrutiny" because plaintiffs cannot "circumvent the requirements for secondary liability by blandly alleging that [certain defendants] are alter egos of other defendants accused of committing primary violations") (internal quotation marks and citation omitted).

### 4.  Newegg Acting Through NTL

As to Plaintiffs' contention that Newegg was merely acting through its Hong Kong subsidiary, NTL, with respect to the alleged fraud, the SAC contains mostly

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)                  Date:  October 4, 2018

Title:        Industrial Bank of Korea, et al. v. ASI Corporation, et al.

conclusory allegations.  And as previously noted, the SAC is riddled with some
variation of the phrase "acting through NTL" when discussing actions attributable only
to Newegg.  (*See, e.g.*, *id.* ¶¶ 91, 93–94, 97, 111, 113, 115, 119, 165, 295).  These
conclusory assertions, however, cannot support Plaintiffs' theory that Newegg was the
driving force behind the alleged fraud, because Plaintiffs appear to want to attribute all
alleged misconduct to Newegg without distinguishing the roles of the three entities in
question: Newegg, NTL, and Magnell.

At the hearing, Plaintiffs reasserted that Newegg's fingerprints are "all over" the
alleged fraudulent scheme.  But as thoroughly discussed above, courts routinely reject
this vague and conclusive attempt to plead liability.  *See, e.g.*, *Swartz*, 476 F.3d at 765;
*Kiewit Pacific Co.*, 2013 WL 5770514, at *11; *Filler*, 2003 WL 22110773, at *3.

Accordingly, Defendants' Motion is **GRANTED** *without leave to amend* with
respect to Plaintiffs' fraud claim.

## C.    Negligent Misrepresentation

Because Defendants raise the same arguments to dismiss Plaintiffs' fraud and
negligent misrepresentation claims (*see* Mot. at 15–21; Reply at 3–13) and because
Plaintiffs also acknowledge and respond to those arguments in defense of their claims
(Opp. at 9–15), the Court concludes that Plaintiffs also fail to plead their negligent
misrepresentation claim with sufficient specificity for the above-stated reasons.

At the hearing, Plaintiffs also argued that liability can be established based on a
promissory fraud theory.  Promissory fraud is a subspecies of fraud where a plaintiff
must plead and prove that the defendant made a promise that the defendant had no
intention of performing.  *See UMG Recordings, Inc. v. Global Eagle Ent., Inc.*, 117 F.
Supp. 3d 1092, 1109 (C.D. Cal. 2015) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631,
638, 49 Cal. Rptr. 2d 377 (1996) ("A promise to do something necessarily implies the
intention to perform; hence, where a promise is made without such intention, there is
an implied misrepresentation of fact that may be actionable fraud.")).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)              Date:  October 4, 2018
Title:       Industrial Bank of Korea, et al. v. ASI Corporation, et al.

According to Plaintiffs, Newegg agreed to purchase Moneual products for resale, but had no intention of legitimately reselling those products since no physical transfer of goods ever occurred.  But Plaintiffs' SAC has alleged neither a promise made to Plaintiffs nor nonperformance of that promise, since the agreements Plaintiffs pointed to were between Newegg and non-party Moneual.  *See Sunnyside Development Co., LLC v. Opsys Limited*, No. 05-cv-553-MHP, 2005 WL 1876106, at *5–6 (N.D. Cal. Aug. 8, 2005) ("[T]he mere fact that a party breaches a promise to perform a condition of contract is as a matter of law insufficient to give rise to an inference that the breaching party acted with fraudulent intent at the time that the promise was made"); *Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1271 (C.D. Cal. 2010) ("[I]f plaintiff adduces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, he will never reach a jury.") (internal citations omitted).

Regardless of whether Plaintiffs' negligent misrepresentation claim is adequately pleaded, Defendants also argue that it is barred by the two-year statute of limitations.  (Mot. at 21).  Plaintiffs commenced this action on October 18, 2017. Defendants contend that the allegations contained in the SAC show that Plaintiffs' negligent misrepresentation claim accrued on or before October 18, 2014, more than two years before the original Complaint was filed.  (Mot. at 22; *see also, e.g.*, SAC ¶¶ 154, 159 (NH purchased NTL export receivables on July 22 and July 25, 2014); 191, 197 (KEB Hana purchased NTL export receivables from April through August 2014); 251 (KB purchased NTL export receivables on June 17, 2014)).  Plaintiffs, however, argue that their negligent misrepresentation claim is grounded in fraud, as opposed to negligence, so the statute of limitation is three years.  (Opp. at 23).

Because Plaintiffs fail to plead their negligent misrepresentation claims with sufficient specificity to survive a motion to dismiss, the Court finds it unnecessary to address which statute of limitation applies.  *See Greyhound Lines Inc. v. Viad Corp.*, No. 15-cv-01820-PHX-DGC, 2016 WL 6833938, at *3 n.1 (D. Ariz. Nov. 21, 2016) (dismissing fraud and negligent misrepresentation claims and noting that the court "need not decide which statute of limitations applies at this time").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)                Date:  October 4, 2018

Title:      Industrial Bank of Korea, et al. v. ASI Corporation, et al.

Accordingly, Defendants' Motion is **GRANTED** *without leave to amend* with respect to Plaintiffs' negligent misrepresentation claims.

### D.    UCL Claim

Plaintiffs finally argue that they have adequately alleged a UCL claim under all three applicable prongs.  (*See* SAC ¶ 321; Opp. at 25).

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  "Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs."  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012).  The UCL "does not proscribe specific activities," but rather, "borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable."  *Puentes v. Wells Fargo Home Mortgage., Inc.*, 160 Cal. App. 4th 638, 643–44, 72 Cal. Rptr. 3d 903 (2008) (internal quotation marks and citations omitted).

As a preliminary matter, Defendants argue that Plaintiffs lack standing to sue under the UCL because Plaintiffs are neither consumers nor competitors and Plaintiffs' UCL claim is based on foreign private lending agreements.  (Mot. at 23).  But the UCL expressly permits claims to be brought by any "person," which is broadly defined to include "natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons."  *See* §§ 17201, 17204.  Further, Plaintiffs also expressly allege that some misconduct may have occurred in California – for example, Newegg executed the two guaranties and the two sales agreements in California.  (SAC ¶¶ 64–65, 69–71).  Whether Plaintiffs' allegations are viable is a different question.  Accordingly, Plaintiffs have standing to sue under the UCL.

The Court will now turn to each prong of the UCL.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)          Date:  October 4, 2018
Title:      Industrial Bank of Korea, et al. v. ASI Corporation, et al.

### 1.  Unlawful

Conduct is "unlawful" under the UCL if it "violate[s] another 'borrowed' law." *Davis*, 691 F.3d at 1168 (quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180, 83 Cal. Rptr. 2d 548 (1999)); *cf. People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515, 128 Cal. Rptr. 2d 463 (2002) ("With respect to the *unlawful* prong, virtually any state, federal or local law can serve as the predicate for an action under section 17200.") (internal quotation marks, citations, and alterations omitted; italics in original).

Here, it appears from the face of the SAC that the "borrowed law" Plaintiffs rely upon for its UCL claim is common law fraud, 18 U.S.C. § 1341 ("Fraud and swindles"), and 18 U.S.C. § 1343 ("Fraud by wire, radio, or television").  (SAC ¶ 321; Opp. at 25).  As discussed above, Plaintiffs have not adequately alleged an alter ego or agency relationship between Defendants and NTL and failed to plead any viable fraud-based claim.  Moreover, alleged common law violations are insufficient for a UCL claim.  *See Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) ("Because Shroyer does not go beyond alleging a violation of common law, he fails to state a claim under the unlawful prong of § 17200.").

### 2.  Unfair

"The UCL does not define the term 'unfair,'" and "the proper definition of 'unfair' conduct against consumers is currently in flux' among California courts." *Davis*, 691 F.3d at 1169 (noting that an alleged misconduct "unfair" when it is (1) "offend[ing] established public policy or … is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers"; or (2) "threaten[ing] an incipient violation of an antitrust law, or violat[ing] the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threaten[ing] or harm[ing] competition") (internal quotation marks and citations omitted).  But in the competitor context, the California Supreme Court articulated:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)                    Date:  October 4, 2018
Title:        Industrial Bank of Korea, et al. v. ASI Corporation, et al.

> When a plaintiff who claims to have suffered injury from a direct
> competitor's "unfair" act or practice invokes section 17200, the word
> "unfair" in that section means conduct that threatens an incipient violation
> of an antitrust law, or violates the policy or spirit of one of those laws
> because its effects are comparable to or the same as a violation of the law,
> or otherwise significantly threatens or harms competition.

*See Cel-Tech*, 20 Cal. 4th at 185.

Here, Plaintiffs' attempt to plead a UCL claim under the unfairness prong fails.
Among other reasons, Plaintiffs offer no factual allegations to support the claim that
any purportedly fraudulent conduct – again, not alleged with sufficient particularity –
threatens to violate the letter, policy, or spirit of the antitrust laws or harm competition.

### 3.  Fraudulent

Conduct is "fraudulent" under the UCL if it is "likely to deceive."  *Morgan v. AT
& T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2009).  The particularity
requirement of Rule 9(b) applies to claims under the fraudulent prong of the UCL.  *See
Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Sosa v. Bank of New
York Mellon Trust*, No. 12-cv-144-LB, 2012 WL 2568188, at *4 (N.D. Cal. July 2,
2012); *Briosos v. Wells Fargo Bank*, 737 F. Supp. 2d 1018, 1033 (N.D. Cal. 2010).
Rule 9(b) requires the plaintiff to allege "the who, what, when, where, and how" of the
alleged fraudulent conduct, *Vess*, 317 F.3d at 1106, and "set forth an explanation as to
why [a] statement or omission complained of was false and misleading," *In re
GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc) (superseded by
statute on other grounds).

Since Plaintiffs have failed to plead its alleged fraudulent conduct with sufficient
particularity, their attempt to plead a UCL claim under the fraudulent prong also fails.
*See Chase v. Hobby Lobby Stores, Inc.*, 2017 WL 4358146, at *8 (S.D. Cal. Oct. 2,
2017) (dismissing UCL claim under the fraudulent prong since the "complaint provides

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7646-MWF (JPRx)                Date:  October 4, 2018
Title:     Industrial Bank of Korea, et al. v. ASI Corporation, et al.

sufficient detail as to the 'who, what, when and where' of the alleged misconduct …
[but] has not adequately alleged the 'how').

Accordingly, Defendants' Motion is **GRANTED** *without leave to amend* with
respect to Plaintiffs' UCL claim.

## V.    CONCLUSION

For the reasons set forth above, the Motion, RJN, and Application are ruled upon
as follows:

- Defendants' Motion to Dismiss Second Amended Complaint is **GRANTED**
  *without leave to amend*; and

- Both Defendants' RJN and Plaintiffs' Ex Parte Application are **DENIED** *as
  moot*.

Plaintiffs' claims against Defendants Magnell Associate Inc., dba Newegg.com
and Newegg, Inc., are therefore **DISMISSED**.

Remaining in this action are Plaintiffs' claims for fraud, negligent
misrepresentation, and violations of California's Unfair Competition Law as to
Defendants ASI Corporation, ASI Computer Technologies, Inc., Bill Chen, Henry
Chen, Frances Chou, and Christine Liang.

IT IS SO ORDERED.